IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MICHELLE K. IDEKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-0248-CV-W-ODS |
| | ) | |
| PPG INDUSTRIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION (1) GRANTING MOTION FOR RECONSIDERATION (2) DISMISSING PLAINTIFF'S CLAIMS WITHOUT PREJUDICE AND (3) DETERMINING ORDER IS APPEALABLE PURSUANT TO RULE 54(b)

Defendants Harley-Davidson, Inc. and Harley-Davidson Motor Company Operation, Inc. (collectively "Harley-Davidson") removed this case to federal court in March 2013. Nearly three months later Harley-Davidson filed a Motion for Summary Judgment. The motion was predicated on a decision dismissing claims asserted against them in a case Plaintiff previously filed in this Court, *Idekr v. PPG Industries, Inc.*, No. 10-0449,[1] and argued collateral estoppel precluded Plaintiff from relitigating the issues that led to the prior dismissal. The Court disagreed. See Order dated October 15, 2013 ("the October Order"). Now pending is Defendants' motion seeking (1) reconsideration or (2) certification of the issue for an interlocutory appeal. The request for reconsideration is granted and Plaintiff's claims are dismissed without prejudice.[2] Harley-Davidson's request for certification for interlocutory appeal is moot, but the Court certifies this order as a final order disposing of all claims against Harley-Davidson, making the Order final and immediately appealable.

---

[1]The Complaint in the first case spelled Plaintiff's last name as it appears in the text. The state court Petition that initiated this suit spells Plaintiff's last name as it appears in the caption of this Order. The Court does not know which spelling is correct.

[2]The Court rejects Plaintiff's argument that the Court is somehow forbidden from reconsidering a non-final order.

## I. BACKGROUND

Plaintiff alleges she was employed in Harley-Davidson's paint/coating department from 2001 to 2009. Her duties required her to work with paint and other products manufactured by Defendants PPG Industries. These products allegedly contained benzene, and Plaintiff's exposure to these products allegedly caused her to develop Non-Hodgkin's Lymphoma. Plaintiff alleges Harley-Davidson acted negligently, thereby causing Plaintiff to be exposed to benzene and develop Non-Hodgkins Lymphoma.

In Case No. 10-0449, Harley-Davidson sought dismissal because Plaintiff's claim was "based on an occupational injury suffered in the State of Missouri and therefore her exclusive remedy arises under the Missouri Workers' Compensation Law." The undersigned agreed and held that after amendments were passed in 2005, the Workers' Compensation Law continued to provide the exclusive mechanism for compensating injuries due to "occupational diseases." The Court concluded Plaintiff's claim was one "covered by Missouri's Workers' Compensation Law" and she therefore could "not proceed on her claim in this forum and instead must assert her claim before the [Missouri] Labor and Industrial Commission." Plaintiff's claims against Harley-Davidson were then dismissed without prejudice to permit Plaintiff to pursue her claim before the Missouri Labor and Industrial Commission ("the Commission"). She and the other parties later stipulated to a dismissal of her remaining claims without prejudice.

Plaintiff filed her claim with the Commission; that claim remains pending. In August 2012, Plaintiff also instituted this suit in state court; when Plaintiff voluntarily dismissed the diversity-destroying defendants, the remaining defendants removed the case to federal court in March 2013.

In June 2013, Harley-Davidson sought dismissal based on the preclusive effect of this Court's Order in Case No. 10-0449. The particulars of Missouri law on this issue have been a matter of contention, which causes the Court to wonder: why did Harley-Davidson not seek a ruling from the state courts when the case was pending there if the objective is to obtain a definitive ruling of state law? The better course would have been

2

to leave the case in state court instead of removing it and asking federal courts to predict what the Missouri Supreme Court might say.

At any rate: the case is here, and the Court is obligated to decide the issue as best as it can.

## II.  DISCUSSION

### A.  Are Plaintiff's Claims Barred by the Workers' Compensation Law?

When the Court issued its ruling in Case No. 10-0449, there were no decisions from Missouri courts addressing the 2005 amendment – leaving the Court to rely solely on an ambiguous statute to predict how the Missouri Supreme Court would rule on the issue.  Thereafter, two of the three divisions of the Missouri Court of Appeals reached an opposite conclusion from the undersigned and ruled that in light of those amendments the Missouri Workers' Compensation Law no longer provided the exclusive remedy for occupational disease claims.  E.g., Amesquita v. Gilster-Mary Lee Corp., 408 S.W.3d 293 (Mo. Ct. App. Sep. 10, 2013) (Eastern District); State ex rel. KCP&L of Greater Mo. Operations Co. v. Cook, 353 S.W.3d 14 (Mo. Ct. App. 2011) (Western District).  The third division has not spoken on the issue but has seemingly endorsed the other divisions' analysis that the statute distinguishes between "injuries by accident" and "injuries by occupational disease."  See Kirkpatrick v. Missouri State Treasurer as Custodian of the Second Injury Fund, 404 S.W.3d 327, 329 (Mo. Ct. App. 2012) (Southern Division) (citing Cook, 353 S.W.3d at 18).  The October Order held that "[a] state's intermediate appellate courts are persuasive and not binding, but it is hard not to be persuaded by the seeming unanimity of Missouri's three appellate divisions.  The Court's prediction as to how the Missouri Supreme Court would rule on this novel issue has proved to be incorrect."

In a footnote, Harley-Davidson suggests the Court's initial determination was actually correct and the Missouri Courts of Appeal are wrong.  This argument rests on amendments passed by the Missouri Legislature in 2013 that are effective January 1, 2014 and that (according to Harley-Davidson) would bar suits such as this one.  Harley-

3

Davidson's interpretation is certainly plausible. However, it is equally plausible that the Missouri Courts of Appeal correctly ascertained the Missouri Legislature's intent and, after seeing the 2005 amendments operate as intended for eight years, the Missouri Legislature decided to change the law again. "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," United States v. Price, 361 U.S. 304, 313 (1960), and the logic underlying this canon of statutory construction applies equally well to the Missouri Legislature. The Court adheres to its conclusion that Plaintiff's claim was not barred by the Missouri Workers' Compensation Law.

### B. Does Collateral Estoppel Apply?

As the Court explained in the October Order, "the question at hand is: does collateral estoppel bind Plaintiff to the results of the Court's previous incorrect decision?" Harley-Davidson argued the answer is "yes," but the Court disagreed. Upon reconsideration, the Court now believes Harley-Davidson is correct.

"Collateral estoppel, or issue preclusion, is used to preclude the relitigation of an issue that already has been decided in a different cause of action." Brown v. Carnahan, 370 S.W.3d 637, 658 (Mo. 2012) (en banc). Determining whether collateral estoppel applies requires consideration of the following factors:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

Royal Ins. Co. of America v. Kirksville Coll. of Osteopathic Medicine, Inc., 304 F.3d 804, 807 (8th Cir. 2002) (quoting James v. Paul, 49 S.W.3d 678, 682 (Mo. 2001) (en banc)); see also State ex. rel Johns v. Kays, 181 S.W.3d 565, 566 (Mo. 2006) (en banc) (per curiam). All of these factors favor application of collateral estoppel:

- The issue decided in the first suit is the same issue presented in this case; namely, does Missouri law permit Plaintiff to pursue this claim in a judicial forum?

4

- The prior adjudication resulted in judgment on the merits of that issue. Collateral estoppel does not require (as does its relative, res judicata) a final judgment per se; it only requires a final determination of the issue under consideration. Sexton v. Jenkins & Assoc., Inc., 152 S.W.3d 270, 273-74 (Mo. 2004) (en banc). The first decision actually resolved the merits of this question.
- Plaintiff – the party against whom collateral estoppel is asserted – was the plaintiff in the first suit.
- Plaintiff – the party against whom collateral estoppel is asserted – had a full and fair opportunity to litigate the issue.

Thus, if this were the end of the matter, Harley-Davidson would prevail. The fact that Case No. 10-0449 was dismissed without prejudice does not matter. The decision in that case left Plaintiff free to proceed in front of the Commission, but the decision explaining why this was so was final (for purposes of collateral estoppel) with respect to all issues necessary in deciding that the case needed to be dismissed without prejudice. Sexton, 152 S.W.3d at 272-74.

Plaintiff argues the fourth component imports an overarching and general requirement of fairness, but the Court disagrees. The fourth factor is important when the parties are different; that is, when non-mutual collateral estoppel is being applied. E.g., Oates v. Safeco Ins. Co. of Am., 583 S.W.2d 713, 719 (Mo. 1979) (en banc) ("Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality."). Plaintiff goes to great lengths to suggest the Harley-Davidson entities in this suit are different from the Harley-Davidson entities sued in the first suit. The Court is not convinced. However, even if the Harley-Davidson defendants are different, the Court is also not persuaded there is any unfairness in applying non-mutual collateral estoppel. Clarification of the law through the announcement of judicial opinions is not the sort of "fairness" this factor was intended to address.

In the October Order, the Court proceeded to consider the extent to which a change in the law affected application of collateral estoppel. The Court concluded the Missouri appellate opinions represented a change in the law that precluded application of collateral estoppel. The Court now believes this conclusion was incorrect.

The critical point is that there is a difference between (1) a decision that was incorrect when made and (2) a decision that was correct when made but that is no longer correct in light of intervening changes in the law. Missouri courts have consistently stated that the correctness of a decision does not affect its conclusiveness. For instance, in <u>Reynolds v. Tinsley</u>, the Missouri Court of Appeals was confronted with a case in which a party filed a separate suit to collect damages on an injunction bond. The claim was rejected because the judge in the underlying suit had determined the injunction bond was void. 612 S.W.2d 828, 829 (Mo. Ct. App. 1981). The Court of Appeals held the conclusion in the first suit collaterally estopped the effort to relitigate the bond's validity in the second suit. The claimant took "pains to argue on the merits that the injunction bond filed by respondents was not void. The question is not before this court, however. Whether or not the prior judgment is legally correct is not at issue in applying the doctrine of res judicata or collateral estoppel." <u>Id</u>.

<u>Reynolds</u> was relied on by the Missouri Court of Appeals in <u>Buckley v. Buckley</u>, a case in which a trial court had terminated child support. Previously, the father had contended the child was emancipated by his anticipated attendance at the Naval Academy Preparatory School and planned enlistment in the military. The trial court rejected this argument on the merits, concluding these actions did not constitute emancipation. After the child was actually enlisted in the military, the father re-asserted the argument: this time, the trial court ruled the child was emancipated. In holding that issue preclusion barred the father's second attempt to litigate the same issue, the Court of Appeals declined to consider the correctness of the first decision, holding that "[w]hether a prior judgment is legally correct is not at issue in applying the doctrine of collateral estoppel. The purposes of collateral estoppel are to relieve the parties of the cost and vexation of multiple litigation, to conserve judicial resources, and to encourage reliance on adjudication by avoidance of inconsistent judicial decisions. These purposes are not served by permitting relitigation based on changes . . . in legislative or decisional law." 889 S.W. 2d 175, 179 (Mo. Ct. App. 1994) (citations omitted).

<u>Buckley</u>, in turn, has been cited with approval by both the Missouri Supreme Court and the Eighth Circuit – two courts whose decisions are binding on this one. In <u>Gott v. Director of Revenue</u>, the Missouri Supreme Court cited <u>Buckley</u> approvingly for

6

the proposition "that for purposes of preventing multiple litigation, conservation of judicial resources, and avoidance of inconsistent judicial decisions, res judicata and collateral estoppel apply equally to all final decisions whether correct or incorrect." 5 S.W.3d 155, 159 n.7 (Mo. 1999) (en banc).  While the issue in Gott may have been res judicata and not collateral estoppel,[3] the fact that the Supreme Court endorsed Buckley is still significant.  Moreover, the Eighth Circuit confronted the issue directly in In re Scarborough, a case in which the issue was Bankruptcy Court's decision regarding the collateral estoppel effect of a prior state court decision.  171 F.3d 638, 641-42 (8th Cir.), cert. denied, 528 U.S. 931 (1999).  In arguing against application of collateral estoppel the debtor argued "that legal mistakes were made in the state court trial," but the Eighth Circuit rejected the argument relying, in part on Buckley: "'[w]hether a prior judgment is legally correct is not at issue in applying the doctrine of collateral estoppel.'"  Id. at 642 (quoting Buckley, 889 S.W.2d at 179).  After citing additional cases standing for this proposition and observing the purposes for collateral estoppel, the Court of Appeals explained that allowing the debtor "to attack the state court judgment would eviscerate the doctrine of collateral estoppel."  Id.[4]

In reaching a contrary result, the October Order relied on cases involving intervening changes in the law.  In so doing, the Court construed those cases as contradicting those cited above.  Further review reveals that the cases involving intervening changes in the law involve something other than an incorrect decision.  The

---

[3]Harley-Davidson contends Gott involved application of collateral estoppel, but the Court is not certain the point is as clear as Harley-Davidson suggests.  However, for the reasons stated the Court discerns no need to delve into the matter.

[4]Other cases support this proposition.  Although some appear to be cases involving the related concept of res judicata and the statements may be dicta, the statements of law are consistent with the analysis in this Order.  For instance: Owen v. City of Branson, 305 S.W.2d 492, 497 (Mo. Ct. App. 1957) ("[A] judgment, *even though erroneous*, is a bar to relitigation (in a later suit) of the issues so determined under the doctrine of collateral estoppel and res judicata.").  Owen's statement was quoted approvingly by the Missouri Supreme Court in Payne v. St. Louis Union Trust Co., 389 S.W.2d 832, 836 (Mo. 1965).  The Court does not include here other cases that clearly involve res judicata; while Harley-Davidson gamely suggests that Missouri courts may have used the term "res judicata" to mean "collateral estoppel" or "issue preclusion," the Court (1) prefers to take the Missouri courts at their word and (2) observes that those cases appear to involve claim preclusion and not issue preclusion.

Court cited <u>ASARCO, Inc. v. McNeill</u> for support, but the circumstances of that case are readily distinguishable from the case at bar – and help explain why it is inapplicable. In <u>ASARCO</u>, a judgment was entered that characterized certain manufacturing materials in a manner that made them exempt from sales and use taxes. 750 S.W.2d 122, 123-24 (Mo. Ct. App. 1988). Several years later, the Department of Revenue attempted to assess sales and use taxes on certain reagents covered by the initial judgment. It was in that context that the Missouri Court of Appeals described several prior cases as establishing that "in order for collateral estoppel to apply, the issue in the later case must be identical in all respects with that decided in the earlier case, *and the controlling facts and applicable legal rules must remain unchanged*. A judicial declaration intervening between the earlier case and the later case can, of course, change the applicable legal rules." <u>Id</u>. at 129 (emphasis supplied). The Court of Appeals examined the controlling statute and regulation and determined they were the same. <u>Id</u>. The Court of Appeals then examined "the controlling facts" and observed that "the reagents [the taxpayer] uses today are the same as those it was using at the time of the [prior] judgment, and . . . the manner in which such reagents are used today remains unchanged since [then]." <u>Id</u>. Finally, the court analyzed case law and determined that interpretation of the statute had not changed. <u>Id</u>. at 129-30. Given that neither the law nor the facts had changed since the original decision, the prior decision addressing taxability collaterally estopped the Director or Revenue from relitigating the issue in the context of subsequent (but identical) transactions.

<u>ASARCO</u> highlights an issue that frequently arises in tax matters, as well as other situations in which the same type of transaction is repeated on multiple occasions. An issue involving the first transaction may arise and be litigated; the question then is whether that litigation precludes relitigation of the issue with respect to future transactions. The answer to that question is "yes," so long as the facts surrounding the transactions are the same and the law has not changed. However, if the law *has* changed in the interim, then the first decision does not preclude relitigation.

Plaintiff garners support from Restatement (Second) of Judgments § 28(2)(b), which suggests issue preclusion does not apply if "a new determination is warranted in order to take account of an intervening change in the applicable legal context or

8

otherwise to avoid inequitable administration of the laws." However, this provision does not aid Plaintiff. Comment c explains that "an intervening change in the relevant legal climate may warrant reexamination of the rule of law applicable as between the parties. The subsequent paragraph then posits a situation similar to the one described above: "a taxpayer's liability for tax in a certain transaction in one year is determined according to a particular interpretation of the tax law, and that interpretation is thereafter abandoned in favor of another interpretation." Illustration 4 to section 28 also exemplifies the point – and further demonstrates the difference between section 28(2)(b) and the case at bar. This case did not involve a series of transactions occurring before and after a change in the law. Indeed, there was no intervening change of the law at all. The change in the law occurred *before* this case arose, when the Missouri Legislature acted in 2005. The Amesquita and KCP&L cases interpreted the 2005 legislative change, but they did not change the law – the law was already changed by the legislature in 2005. Amesquita and KCP&L demonstrate the October Order was wrong – but as has been established, parties are precluded from relitigating issues finally decided in incorrect orders.

Ultimately, the Court is convinced that if the order in Case No. 10-0449 had been issued by a Missouri state court before Amesquita and KCP&L were decided – and the Plaintiff made no effort to obtain further review of that order – Missouri courts would preclude relitigation of the issue. This Court is obligated to assign the same preclusive effect to the decision in Case No. 10-0449.

### *3. Appealability*

This Order resolves all claims against Harley-Davidson, but does not affect the claims against PPG Industries or Rohm & Haas. The Court discerns no just reason to delay Plaintiff's appeal of this Order, so Plaintiff may appeal the Order now. See Rule 54(b).

## III. CONCLUSION

The 2010 Order constituted an incorrect prediction of Missouri law. Nevertheless, the Order in Case No. 10-0449 is entitled to preclusive effect with respect to the issue decided. The Court declines to enter judgment in Harley-Davidson's favor, as that would suggest a judgment has been entered on Plaintiff's claims. Instead, Plaintiff's claims are dismissed without prejudice to her right to proceed in front of the Commission.

This Order is immediately appealable pursuant to Rule 54(b).
IT IS SO ORDERED.


                                            /s/ Ortrie D. Smith
                                            ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 2, 2014                UNITED STATES DISTRICT COURT